UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MONWELL DOUGLAS, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) ) 2:11-cv-179-WTL-DKL ) |
| REGISTERED NURSE KIM HOBSON, Employed by Correctional Medical Services, et al., | ) ) ) ) |
| Defendants. | ) ) |

**Entry Discussing Motion for Summary Judgment**

Monwell Douglas brings this action pursuant to 42 U.S.C. § 1983 alleging that the defendants were deliberately indifferent to his serious medical needs. Defendants Nurse Kim Hobson, Nurse Kim Gray, and Dr. Jacquer LeClerc (the "medical defendants") move for summary judgment.[1]

**Standard of Review**

As noted, the medical defendants seek resolution of Douglas' claim through the entry of summary judgment. Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." **FED.R.CIV.P.** Rule 56(a). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

---

[1] The claim against defendant Norma Weinke has recently been resolved through the court's ruling on her motion for summary judgment.

"When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." **FED.R.CIV.P.** 56(e)(2). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

**Facts**

The following facts are undisputed or if disputed represent the version most favorable to Douglas as the non-movant.

On or about February 3, 2011, Douglas first complained of a skin rash and indicated that the rash was the result of taking Naproxen. Medical staff instructed Douglas to stop taking Naproxen and sign up for Nursing Sick Call for further evaluation. Hobson explained that Douglas would not be seen on February 3, 2011, and he would need to sign up for Nursing Sick Call.

On February 4, 2011, Hobson attempted to see Douglas during Nursing Sick Call in response to his complaints of a rash. Neither Nurse Hobson nor Nurse Gray recalls receiving a phone call regarding Mr. Douglas needing "emergency access" to healthcare. Douglas was immediately yelled at by Kim Hobson. He explained to Hobson that he was not there to argue and was in a lot of pain and requested to be examined by the on-call doctor. Hobson explained that Douglas was not going to see anyone else and she was ready to throw him out if he asked to see a doctor again. Gray walked by and Douglas explained his troubles and requested her help to be seen by a doctor. Gray explained that Douglas would need to remove his shirt to be examined by Hobson.[2] Douglas did so. Hobson looked at Douglas' ailment then requested that the correctional officers remove him.

On February 5, 2011, Douglas again requested the assistance of a doctor for his painful skin ailment. Hobson again denied him access to a doctor. He was placed on a medical quarantine Red Tag and locked in his cell for two days. Hobson says she never placed Douglas on Red Tag Quarantine.

On February 7, 2011, Dr. LeClerc examined Mr. Douglas and determined a differential diagnosis of (1) allergic dermatitis, (2) fungal infection, or (3) both. Therefore, Dr. LeClerc prescribed Mr. Douglas an antifungal medication and planned to perform a punch biopsy test to ascertain a final diagnosis.[3] On February

---

[2] This was Gray's only encounter with Douglas. As the Director of Nursing, Nurse Gray has little involvement in direct patient care.

[3] Douglas disputes this assertion, arguing that if the creams were successful, there would no need for further treatment, but he does not support his assertion with evidence.

15, 2011, Nurse Hobson saw Mr. Douglas at his cell door and instructed him on the proper way to request medical attention by submitting a Healthcare Request Form and signing up for Nursing Sick Call.

On February 16, 2011, Dr. LeClerc and Nurse Hobson assessed Douglas. Douglas reported that the rash was spreading to his face. Dr. LeClerc reported that the rash was improving and offered another tube of antifungal medication for his rash, which he refused. Dr. LeClerc scheduled Douglas for a punch biopsy test the following day. After February 16, 2011, Nurse Hobson had no further involvement with Mr. Douglas or his care.

On February 17, 2011, Douglas reported to the medical staff to undergo a punch biopsy test to diagnose the cause of his skin rash. However, custody staff removed Mr. Douglas from the medical department before the biopsy could be completed.[4] On February 21, 2011, Mr. Douglas submitted a Request for Healthcare in which he stated that he would never again be seen by prison medical staff for his skin issues. After February 21, 2011, Mr. Douglas submitted no more Requests for Healthcare complaining of skin problems. In September of 2011, Mr. Douglas signed a refusal to be seen for his annual health screening.

The medical defendants assessed Douglas in response to his complaints, provided an appropriate antifungal medication, and scheduled him for a punch biopsy test to ascertain a final diagnosis. It has been Douglas' own behavioral issues and refusals of care that have contributed to the difficulty in diagnosing and treating his skin rash. Douglas does not require an evaluation for his skin rash at an outside facility. Instead, his skin issues could almost certainly be resolved if he would allow prison medical staff to assess and care for his condition.

The care provided, or attempted to be provided, to Douglas has been within the standard of care.

## Discussion

The right implicated by Douglas' allegations is the Eighth Amendment right to be free from the imposition of cruel and unusual punishments, for it is the Eighth Amendment which imposes a duty on prison officials to provide medical care to inmates. *Vance v. Peters,* 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). In order for an inmate to state a claim under 42 U.S.C. ' 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference exists only when an official "knows of and disregards an excessive risk to an inmate's

---

[4] The defendants assert that Douglas was removed for conduct reasons. Douglas responds that Nurse Carol Holmes reported that Douglas' was just the opposite of what Douglas was reporting throughout the medical process. Douglas' chart states: "The offender was very polite to Dr. Leclerc and myself. He was then escorted out at 10:00 am by custody for conduct reasons."

health; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (construing *Estelle*).

> A claim of deliberate indifference to a serious medical need contains both an objective and a subjective component. To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. To satisfy the subjective component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind." The officials must know of and disregard an excessive risk to inmate health; indeed they must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." This is not to say that a prisoner must establish that officials intended or desired the harm that transpired. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk. Additionally, a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005) (some quotations and internal citations omitted).

A court examines the totality of an inmate's medical care when determining whether defendants have been deliberately indifferent to an inmate's serious medical needs. *Reed v. McBride,* 178 F.3d 849, 855 (7th Cir. 1999). It is well-settled that while incarcerated, an inmate is not entitled to the best possible care or to receive particular treatment of his choice. *See Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997). Negligence, even gross negligence, is insufficient to establish deliberate indifference under the Eighth Amendment. *See Farmer,* 511 U.S. at 835; *Mathis v. Fairman,* 120 F.3d 88, 92 (7th Cir. 1997); *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996). For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) (quoting *Collignon v. Milwaukee County*, 163 F.3d 982, 988 (7th Cir. 1998)); s*ee also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Here, Douglas was examined and treated for his skin rash. A punch biopsy was scheduled but not performed and Douglas has not sought further treatment for this skin condition. Douglas admits that he refused and will continue to refuse treatment from the defendants. Douglas is not entitled to demand specific care, and the fact that he is displeased with the type of care he received does not establish

deliberate indifference. *See Forbes,* 112 F.3d at 267. Douglas does not designate any evidence showing that Dr. LeClerc's medical decisions and treatment were a "substantial departure from accepted professional judgment." *Sain*, 512 F.3d at 895. The medical defendants are therefore entitled to summary judgment on his claim of deliberate indifference.

## Conclusion

The medical defendants' motion for summary judgment [56] is **granted**.

All claims against all parties have now been resolved. Judgment consistent with this Entry and with the Entry of July 13, 2012, shall now issue.

**IT IS SO ORDERED.**

Date: 07/20/2012

Distribution:

Monwell Douglas
DOC #150812
Wabash Valley Correctional Facility
6908 S. Old U.S. Highway 41
P.O. Box 1111
Carlisle, IN 47838

All electronically registered counsel

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana